**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**FORD: KIMBERLY-CHEVELLE, f/k/a KIMBERLY C. FORD**

***Plaintiff,***

**v.**

**SERVBANK N.A.; THE MONEY SOURCE INC.; LAKEVIEW LOAN SERVICING LLC; AND LOANCARE LLC**

***Defendants.***

**Case No. 5:25-CV-01083-JKP**

# MEMORANDUM OPINION AND ORDER

Before the Court are four motions:

(1) Defendants Lakeview Loan Servicing LLC and LoanCare LLC's Motion to Dismiss, (*ECF No. 64*);

(2) Plaintiff's Third Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 85*);

(3) Plaintiff's Motion for Leave to File Third Amended Complaint, (*ECF No. 86*); and

(4) Defendants Servbank N.A. and The Money Source Inc.'s Motion to Dismiss, (*ECF No. 93*).

Upon consideration, Plaintiff's Motions, (*ECF Nos. 85, 86*), will be denied and Defendants' Motions, (*ECF Nos. 64, 93*), will be granted.

## **PROCEDURAL BACKGROUND**

Plaintiff "Ford: Kimberly-Chevelle, formerly known as Kimberly C. Ford" ("Ford"), who proceeds *pro se*, filed suit "seek[ing] a judicial determination of who, if anyone, has standing and authority to enforce the mortgage loan on her home of more than twenty-two years." *ECF No. 63*. Named Defendants include: (1) Servbank N.A. ("Servbank"); (2) The Money Source Inc. ("TMS"); (3) Lakeview Loan Servicing LLC ("Lakeview"); and (4) LoanCare LLC ("LoanCare").

Ford asserts nine causes of action:

(1) "Quiet Title (Declaratory Judgment)" against all Defendants;

(2) "Violations of the Fair Debt Collection Practices Act" against Servbank and LoanCare;

(3) "Violations of the Real Estate Settlement Procedures Act" against Servbank and LoanCare;

(4) "Violation of TILA Section 1641(f)(2), Failure to Identify Owner of Debt" against Servbank and LoanCare;

(5) "Slander of Title" against all Defendants;

(6) "Fraudulent Misrepresentation" against all Defendants;

(7) "Fraudulent Concealment/Fraud by Nondisclosure" against all Defendants;

(8) "Declaratory Judgment" against Servbank and TMS; and

(9) "Material Alteration and Failure to Produce the Original Note" against all Defendants.

*ECF No. 63* at 23–36.

Responding, Defendants Lakeview and LoanCare filed their Motion to Dismiss Plaintiff's Second Amended Complaint, (*ECF No. 64*), brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Ford filed a Response, (*see ECF Nos. 65*, *66*), to which Lakeview and

LoanCare filed a Reply, (*ECF No. 68*). Ford later filed a Surreply, (*ECF No. 70*), to which Lakeview and LoanCare filed a Response, (*ECF No. 73*).

Next, Ford filed her Third Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 85*), and Motion for Leave to File Third Amended Complaint, (*ECF No. 86*). Defendants filed responses to these motions. *See ECF Nos. 91, 92, 93*. Ford did not file any replies, but on September 30, 2026, Ford filed a Notice of Bankruptcy Filing, (*ECF No. 89*).

Defendants Servbank and TMS then filed their respective Motion to Dismiss Plaintiff's Second Amended Complaint, (*ECF No. 93*), brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Ford did not file a response.

**FACTUAL BACKGROUND**

Ford executed the Note and Deed of Trust relating to the subject property ("the Property") on February 10, 2015. *ECF No. 63* at 2. Ford identifies "Peoples Bank, a Kansas banking corporation[,]" as the original lender. *Id*. at 3. On July 9, 2025, Ford "conveyed legal title to the Property to an irrevocable trust," of which she is the sole beneficiary. *Id*. at 3.

Ford alleges from "October 2015 to April 2023" she "made mortgage payments to The Money Source, Inc. ["TMS"] . . . identified as the servicer/payment facing entity [for the loan]." *Id*. at 8. In April 2023, her "mortgage statement was branded as Servbank, directing [Ford] to make payments to Servbank through myloan.servbank.com." *Id*. at 8. Ford acknowledges Texas records indicate Servbank's stated purpose is "Mortgage Servicing and Subservicing." *Id*. at 9.

On January 27, 2026, Servbank executed an Assignment of Deed of Trust to Lakeview Loan Servicing LLC ("Lakeview"). *Id*. at 10. Ford alleges "LoanCare assumed servicing of the subject loan on behalf of Lakeview effective February 3, 2026." *Id*. at 6 and 18; *see also ECF No. 33*. On February 18, 2026, LoanCare sent Ford a "[f]ormal default and cure notice

demanding $12,501.19 with cure deadline of March 25, 2026, threatening 'acceleration of all sums secured by the Security Instrument and sale of the property.'" *ECF No. 63* at 18–19.

## LEGAL STANDARDS AND ANALYSIS

As a preliminary matter, on September 30, 2026, Ford filed a Notice of Bankruptcy Filing, (*ECF No. 89*). In the Notice, Ford reports she filed a Voluntary Petition under Chapter 13 of the United States Bankruptcy Code. *Id*. Ford asserts this "operates as an immediate automatic stay of the foreclosure sale scheduled for October 6, 2026, as well as the continuation of this judicial proceeding." *Id*. As described by a sister district court assessing similar facts:

> Plaintiff's reliance on the bankruptcy stay is misplaced from the outset. On July 21, 2022, Plaintiff submitted a "Suggestion of Bankruptcy," misleadingly asserting that "there is an automatic stay placed on the above-entitled and numbered cause." Doc. 25. This was flatly incorrect. As Judge Werlein correctly noted in a related case, the automatic stay under 11 U.S.C. § 362(a) applies only to actions *against* the debtor, not those *brought by* the debtor. Doc. 40-3 at 3; *see* 11 U.S.C. § 362(a) (an automatic stay, when applicable, stays only "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title"). Here, Plaintiff is the initiating party in this litigation; the stay had no legal effect on claims that Plaintiff brought against another party. *See In re: Zerric Williams*, No. 22-32028 (Bankr. S.D. Tex).

*Williams v. DeJoy*, No. 4:21-CV-01520, 2025 WL 1899065 at *11 (S.D. Tex. July 9, 2025), *appeal dismissed sub nom. Williams v. Steiner*, No. 25-20356, 2026 WL 2475059 (5th Cir. Apr. 3, 2026). Thus, because Ford is the initiating party in this litigation, the automatic stay has no legal effect on claims Ford brought against Defendants. The Court therefore proceeds with its analysis of the four Motions, (*ECF Nos. 64, 85, 86, 93*), pending before the Court.

### I. Plaintiff's Third Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 85*)

Plaintiff's Third Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 85*), fails for reasons the Court already articulated to Ford. As the record reflects, the Court previously denied Ford's requests for a temporary restraining order and preliminary injunction three times. *ECF Nos. 9, 51, 82*. In the Court's Orders denying these requests, the Court detailed the legal standards for obtaining injunctive relief. *Id*. In the instant Motion, Ford again fails to make a showing of a substantial likelihood that she will prevail on the merits of any cause of action. *See ECF Nos. 82, 85*. For this reason, Plaintiff's Third Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 85*), will be denied.

## II. Defendants Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), and Defendants Servbank and TMS' Motion to Dismiss, (*ECF No. 93*)

### A. Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether the plaintiff should be permitted to present evidence to support any adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8.

To warrant dismissal under Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Fed. R. Civ. P. 12(b)(6); *Clark v.*

*Amoco Prod. Co.*, 794 F. 2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D. Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he [or she] could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F. 3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F. 3d 1365, 1368 (5th Cir. 1996). When reviewing the complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F. 3d at 324).

**B. Lack of Response to Rule 12(b)(6) Motion**

While Rule 12 does not by its terms require an opposition, failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion.[1] *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F. 3d 794, 806 (5th Cir. 2012). Rather, a court assesses the legal sufficiency of the complaint under the circumstances. *Id.* (citing Fed. R. Civ. P. 12(b)(6)).

**C. Analysis**

The Court will address the arguments put forth in Defendants Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), and Defendants Servbank and TMS' Motion to Dismiss, (*ECF No. 93*). Although Ford did not respond to Defendants Servbank and TMS' Motion to Dismiss,

[1] *See, e.g., John v. Louisiana*, 757 F. 2d 698, 707–10 (5th Cir. 1985) ("[A]lthough [the Fifth Circuit has] endorsed the adoption of local rules that require parties to file responses to opposed motions, [the Fifth Circuit has] not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation."); *Ramsey v. Signal Delivery Serv., Inc.,* 631 F. 2d 1210, 1213 (5th Cir. 1980); *accord, e.g., McCall v. Pataki,* 232 F. 3d 321, 322 (2d Cir. 2000) ("[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint.").

(*ECF No. 93*), the court will assess the legal sufficiency of Ford's Second Amended Complaint as it relates to Servbank and TMS' arguments for dismissal.

**1. "Violations of the Fair Debt Collection Practices Act" against Servbank and LoanCare**

LoanCare asserts that it is not a debt collector under the Fair Debt Collection Practices Act ("FDCPA"). *ECF No. 64* at 4–7. In her Response to Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), Ford alleges LoanCare identified itself as a debt collector on a debt collector disclaimer it included at the bottom of a letter, therefore LoanCare meets the statutory definition of "debt collector." *ECF No. 65* at 9. Ford also seemingly implies LoanCare is not exempt from the definition of debt collector under the FDCPA because the loan was in default at the time it was obtained. *Id*. at 8–9.

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA restricts debt collectors from making false or misleading representations or using unfair collection methods. *Id.*; 15 U.S.C. §§ 1692e, 1692f. Debt collectors must also provide certain written information concerning the debt collection. 15 U.S.C. § 1692g.

The FDCPA defines a "debt collector" as follows:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The statute exempts from the definition of "debt collector:"

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide

> fiduciary obligation or a bona fide escrow arrangement [or] . . . concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(F)(i) & (iii).

The Court agrees with LoanCare that Ford does not adequately allege it is a debt collector for purposes of the FDCPA. The Fifth Circuit has repeatedly held mortgage servicing companies are not "debt collectors" under the FDCPA.[2]

In Ford's Second Amended Complaint, Ford acknowledges "LoanCare assumed servicing of the subject loan on behalf of Lakeview effective February 3, 2026." *ECF No. 63* at 6 and 18. Ford also submitted the Notice of Mortgage Servicing Transfer she received from Servbank informing her that Lakeview would begin servicing the loan. *Id.* at 15; *see ECF No. 33* at 7–8. These allegations and the Notice of Mortgage Servicing Transfer indicate LoanCare is alleged to be a mortgage servicing company and not a debt collector under the FDCPA.

In her Response to Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), Ford alleges LoanCare identified itself as a debt collector on a debt collector disclaimer it included at the bottom of a letter, therefore LoanCare meets the statutory definition of "debt collector."[3] Federal district courts have rejected this argument and held the mere use of a debt collector disclaimer in correspondence with borrowers does not, by itself, confer debt collector status or

[2] *Perry v. Stewart Title Co.*, 756 F. 2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include . . . a mortgage servicing company" (internal citations omitted)); *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007), *aff'd*, 269 F. App'x. 523 (5th Cir. 2008) (unpublished) ("Mortgage companies collecting debts are not 'debt collectors.'"); *Oden v. JPMorgan Chase Bank, N.A.*, 2012 WL 1610782, at *2 (S.D. Tex. May 8, 2012) ("Generally, mortgage companies and loan servicers are not debt collectors under the FDCPA."); *Akintunji v. Chase Home Fin., L.L.C.*, 2011 WL 2470709, at *3 (S.D. Tex. June 20, 2011) (same).

[3] "In its written communication to Plaintiff dated February 19, 2026, LoanCare stated: 'TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) AND/OR STATE DEBT COLLECTIONS LAWS ARE APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.'" *ECF No. 65* at 9.

liability under the FDCPA.[4] The Court is in agreement with these courts, finding the fact LoanCare included a debt collector disclaimer at the bottom of a letter to Ford does not confer debt collector status on LoanCare under the FDCPA.

In her Response to Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), Ford also seemingly implies LoanCare is not exempt from the FDCPA's definition of debt collector because the loan was in default at the time it was obtained. Ford states "Plaintiff alleges that Defendants obtained their roles in connection with a loan they treated as delinquent and in default, placing them within Section 1692a(6) for purposes of this loan." *ECF No. 65* at 9. This, however, does not match the allegations in Ford's Second Amended Complaint. In Ford's Second Amended Complaint, Ford does not allege the loan was in default. Instead, Ford alleges "LoanCare assumed servicing of the subject loan on behalf of Lakeview effective February 3, 2026." *Id*. at 6 and 18; *see also ECF No. 33*. On February 18, 2026, LoanCare sent Ford a "[f]ormal default and cure notice demanding $12,501.19 with cure deadline of March 25, 2026, threatening 'acceleration of all sums secured by the Security Instrument and sale of the property.'" *ECF No. 63* at 18–19. Thus, this statement in Ford's Response—which is not contained in Ford's Second Amended Complaint—does not confer debt collector status on LoanCare under the FDCPA either.

The Court finds Ford also does not adequately allege Servbank is a debt collector for purposes of the FDCPA. In her Second Amended Complaint, Ford acknowledges "Servbank served as sub-servicer of the subject loan and held itself out as having authority to enforce the mortgage obligation." *ECF No. 63* at 5. This allegation indicates Servbank is a mortgage servicing company and not a debt collector under the FDCPA. Further, to the extent Ford alleges

---

[4] *VanHauen v. Am. Home Mortg. Servicing, Inc.*, No. 4:11-CV-00461, 2012 WL 874330, at *5 (E.D. Tex. Feb. 17, 2012), *R. & R. adopted*, No. 4:11-CV-00461, 2012 WL 874328 (E.D. Tex. Mar. 14, 2012) (citing *Fouche v. Shapiro & Massey L.L.P.,* 575 F. Supp.2d 776, 788, n.6 (S.D. Miss. 2008)).

Servbank "failed to provide adequate validation" under "15 U.S.C. § 1692g(b)," Ford does not include any allegations as to how the validation purportedly was inadequate or how Servbank continued any collection activity. *ECF No. 63* at 24; *see Hoestenbach v. AFNI, Inc.*, No. 1:20-CV-00818, 2021 WL 2909144, at *4 (W.D. Tex. Feb. 26, 2021), *R. & R. adopted*, No. 1:20-CV-00818, 2021 WL 2878554 (W.D. Tex. Mar. 3, 2021).

Accordingly, for these reasons, the Court will grant Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), and Servbank and TMS' Motion to Dismiss, (*ECF No. 93*), in this regard.

**2. "Violations of the Real Estate Settlement Procedures Act" against Servbank and LoanCare**

LoanCare asserts Ford's Real Estate Settlement Procedures Act ("RESPA") cause of action fails because Ford does not allege she sent a qualified written request ("QWR") to LoanCare. *ECF No. 64* at 7. In her Response to Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), Ford again introduces new factual allegations, alleging she sent LoanCare a QWR on March 11, 2026. *ECF No. 65* at 10–12.

Section 2605(e) of RESPA describes the duty of a loan servicer to respond to borrower inquiries and provides that if a "servicer of a federally related mortgage loan receives a [QWR] . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). To state a claim under Section 2605(e), a plaintiff must plead that her correspondence met the requirements of a QWR, that the defendant failed to make a timely response, and that this failure caused her actual damages. *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x. 233, 241 (5th Cir. 2014) (unpublished) (citing 12 U.S.C. § 2605(e), (f)).

"To be considered a QWR under RESPA, the letter must relate to 'servicing' the loan." *Abor v. Planet Home Lending LLC*, 2025 WL 2945855, at *9 (N.D. Tex. Sept. 17, 2025) (citation omitted), *R. & R. adopted*, 2026 WL 196606 (N.D. Tex. Jan. 26, 2026). "[A] request for a loss mitigation review and retention options does not relate to servicing of the loan." *Banks v. Wells Fargo Bank N.A.*, 2018 WL 1427079, at *3 (N.D. Tex. Mar. 21, 2018). Thus, to the extent Ford alleges her request for "[l]oss mitigation options" constitutes a QWR, her claim under Section 2605(e) fails. *See ECF No. 63* at 3, 27; *see, e.g., Vanbaulen v. Wells Fargo Fin. Tex., Inc.*, 2020 WL 1817311, at *6 (E.D. Tex. Mar. 13, 2020), *R. & R. adopted*, 2020 WL 1812671 (E.D. Tex. Apr. 9, 2020) ("A request for a loss mitigation review does not relate to servicing of a loan. Consequently, to the extent Plaintiffs argue any request for loss mitigation qualifies as a qualified written request, Plaintiffs['] claim must fail.").

The Court agrees with LoanCare that Ford does not adequately allege LoanCare received a QWR from Ford. In Ford's Second Amended Complaint, she alleges only that she "submitted written communications to **Servbank** that constituted Qualified Written Requests." *ECF No. 63* at 26 (emphasis added). There are no allegations she submitted a QWR to LoanCare in her Second Amended Complaint. *See id*. As stated above, in her Response, Ford again introduces new factual allegations, alleging she sent LoanCare a QWR on March 11, 2026. *Compare ECF No. 63* at 26 *and ECF No. 65* at 10. These new factual allegations are not properly before the Court. *Kunzweiler v. Zero.Net, Inc.*, No. 3:00-CV-02553, 2002 WL 1461732, at *18 (N.D. Tex. July 3, 2002) (collecting cases). At the motion to dismiss stage of the proceedings, the court is limited to considering the contents of the operative complaint and its attachments. *See Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). Because of this limitation, new factual allegations alleged in a response to a motion to

dismiss are not properly before the court and will not be considered when ruling on the motion to dismiss.[5] The Court is therefore limited to considering the factual allegations in Ford's Second Amended Complaint. Thus, the new factual allegations Ford includes in her Response are not properly before the Court, and Ford cannot avoid dismissal by relying on those new factual allegations.

The Court finds Ford also does not adequately allege Servbank received a QWR from Ford. In Ford's Second Amended Complaint, she alleges that she "submitted written communications to Servbank that constituted [QWRs] . . . requesting information about the ownership of the loan, the identity of the Note holder, and a complete accounting. Servbank failed to provide a substantive response within the time required by statute." *ECF No. 63* at 26. Ford fails to allege facts indicating how Servbank's alleged non-substantive response was insufficient under RESPA. *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x. 233 (5th Cir. 2014) (unpublished). Still, her request for documents unrelated to the Note, such as an accounting and a complete transactional history could reasonably relate to the servicing of her mortgage. 12 U.S.C. §§ 2605(i)(3), 2605(e)(1)(A). Nevertheless, Ford fails to allege any nonconclusory facts giving rise to a reasonable inference that Ford suffered actual damages[6] from Servbank's alleged failure to substantively respond to her QWR. *ECF No. 63* at 27 ("Plaintiff has suffered actual damages").

---

[5] *See*, *e.g.*, *McDavid v. Hous. Indep. Sch. Dist.*, No. 4:21-CV-00993, 2021 WL 4555241, at *4 (S.D. Tex. Oct. 5, 2021) (rejecting the plaintiff's attempt to "use a response to a motion to dismiss as a backdoor to add allegations that [the plaintiff] did not plead in her complaint"); *Coach, Inc. v. Angela's Boutique*, No. 4:10-CV-01108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011) ("New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings.").

[6] *Kareem v. Am. Home Mortg. Servicing, Inc.*, 479 F. App'x. 619, 620 (5th Cir. 2012) (unpublished); *Holloway v. Wells Fargo Bank, N.A.*, No. 3:12-CV-02184, 2013 WL 1187156, at *23 (N.D. Tex. Feb. 26, 2013), *R. & R. adopted*, No. 3:12-CV-02184, 2013 WL 1189215 (N.D. Tex. Mar. 22, 2013) (citing *Platero v. Bank of Am., N.A.*, No. 3:11–CV–03421, 2012 WL 2368465, at *3 (N.D. Tex. May 25, 2012), *R. & R. adopted,* 2012 WL 2373297 (N.D. Tex. June 21, 2012) (dismissing RESPA claim where the plaintiff failed to allege any facts showing that he suffered actual damages as a result of the purported violation)).

Accordingly, for these reasons, the Court will grant Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), and Servbank and TMS' Motion to Dismiss, (*ECF No. 93*), in this regard.

**3. "Violation of TILA Section 1641(f)(2), Failure to Identify Owner of Debt" against Servbank and LoanCare**

Both Servbank and LoanCare assert Ford's Truth in Lending Act ("TILA") cause of action fails because, among other things, Servbank and LoanCare responded to Ford's requests seeking the identity of the owner of the debt and master servicer in compliance with 15 U.S.C. Section 1641(f)(2). *ECF No. 64* at 9–10; *ECF No. 93* at 9. In her Response to Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), Ford alleges she "received conflicting and unreconciled information over time, including references variously to Servbank, to Ginnie Mae, and to Fannie Mae, identifications that cannot all be correct." *ECF No. 65* at 12.

TILA, 15 U.S.C. Section 1641, addresses the "[l]iability of assignees" of creditors. Ford brings this cause of action pursuant to Section 1641(f)(2). 15 U.S.C. Section 1641(f) reads:

> **(f) Treatment of servicer**
>
> **(1) In general**
>
> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.
>
> **(2) Servicer not treated as owner on basis of assignment for administrative convenience**
>
> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the

> servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

The Ninth Circuit Court of Appeals has found that "reading the statute as a whole and with respect to the subsection at issue brings us to the [] conclusion: the duty to provide notice under [Section] 1641(f)(2) applies only to a servicer-assignee." *Gale v. First Franklin Loan Services*, 701 F. 3d 1240, 1246 (9th Cir. 2012). District courts within the Fifth Circuit have found the same.[7]

In the present case, while Servbank and LoanCare are alleged to be mortgage servicing companies, there are no allegations or evidence Servbank or LoanCare ever owned the obligation. In Ford's Second Amended Complaint, Ford alleges "Servbank served as sub-servicer of the subject loan and held itself out as having authority to enforce the mortgage obligation." *ECF No. 63* at 5. Ford further alleges on January 27, 2026, Servbank executed an Assignment of Deed of Trust to Lakeview. *Id.* at 10. Ford then alleges "LoanCare assumed servicing of the subject loan on behalf of Lakeview effective February 3, 2026." *Id.* at 6 and 18; *see also ECF No. 33*. The Court notes that to the extent Ford alleges Lakeview is the current owner of the Note, Ford does not bring this cause of action against Lakeview. *See ECF No. 63* at 28, 74.

---

[7] *Shawn Wesley Goodman v. Midland Mortgage*, No. 3:25-CV-00863, 2026 WL 3072873, at *10 (M.D. La. Oct. 14, 2026) ("Plaintiff does not allege that Defendant was the owner of the loan; in fact, Plaintiff disputes whether Defendant even had authority to enforce the loan. Thus, Plaintiff has failed to show that Defendant, as a servicer of the loan, is liable under TILA."); *Aguiluz v. Citibank, N.A.*, No. 2:18-CV-05126, 2019 WL 5102235, at *4 (E.D. La. Oct. 11, 2019) (no allegations or evidence that the servicer ever owned the obligation entitles defendant to summary judgment); *Chambers v. Citimortgage, Inc.*, No. 1:14-CV-00086, 2014 WL 1819970, at *4 (W.D. Tex. May 7, 2014); *Fantroy v. First Fin. Bank, N.A.*, No. 3:12-CV-00082, 2013 WL 4434913, at *6 (N.D. Tex. Aug. 19, 2013) ("A loan servicer may also be liable, but only if the servicer 'is or was the owner of the obligation.'"); *Garcia v. Universal Mortg. Corp.*, No. 3:12-CV-02460, 2013 WL 1858195, at *6 (N.D. Tex. May 3, 2013) (stating that without allegations that the servicer was the owner, the claim fails as a matter of law).

The Court is in agreement with the text-based analyses undertaken by the above-referenced courts. The Court therefore finds that because Servbank and LoanCare are alleged to be mortgage servicing companies without ownership of the obligation they are not subject to TILA liability.

Accordingly, for these reasons, the Court will grant Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), and Servbank and TMS' Motion to Dismiss, (*ECF No. 93*), in this regard.

**4. "Slander of Title" against all Defendants**

Lakeview and LoanCare assert this cause of action fails because Ford may not assert claims on behalf of the irrevocable trust, and all Defendants assert Ford fails to state a claim. *ECF No. 64* at 10–12; *ECF No. 93* at 9–11. In her Response to Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), regarding claims on behalf of the trust, Ford states "to the extent any title-related claim required it, [Ford is] the assignee of claims by written assignment from the trustee." *ECF No. 65* at 4. The Court notes Ford's Second Amended Complaint contains the following assertion:

> Out of an abundance of caution, the independent trustee of the irrevocable trust holding legal title has executed an Assignment of Claims to Plaintiff [Ford] individually, assigning to Plaintiff [Ford] all rights to pursue claims affecting the Property, the underlying Note and Deed of Trust, and all related obligations. The Trustee's Assignment of Claims is attached as Exhibit A and incorporated by reference.

*ECF No. 63* at 3–4.

To state a claim for slander of title, a plaintiff must allege "(1) the utterings and publishing of disparaging words; (2) that they were false; (3) that they were malicious; (4) that special damages were sustained thereby; (5) that the plaintiff possessed an estate or interest in the property disparaged; and (6) the loss of a specific sale." *Emeribe v. Wells Fargo Bank, N.A.*,

2013 WL 140617, at *3 (S.D. Tex. Jan. 10, 2013) (citing *Williams v. Jennings*, 755 S.W.2d 874, 879 (Tex. App.—Houston [14th Dist.] 1988, writ ref'd)). For the last element, a plaintiff must allege that "a pending transaction was defeated by the slander." *K&N Builder Sales, Inc. v. Baldwin*, 2013 WL 1279292, at *7 (Tex. App.—Houston [14th Dist.] Mar. 28, 2013, pet. denied) (citing *A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex. 1982)).

In the present case, setting aside Ford's status as obligor, purported trustee beneficiary, and purported assignee of the trustee's claims, what is certain is nowhere in her Response to Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), does Ford address the specific elements relating to a slander of title cause of action. Reviewing Ford's Second Amended Complaint, the Court agrees with all Defendants that Ford fails to plead any disparaging statements were made with malice that resulted in the loss of a specific sale. The absence of these critical allegations means Ford has not stated a plausible basis for relief.[8]

Accordingly, for these reasons, the Court will grant Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), and Servbank and TMS' Motion to Dismiss, (*ECF No. 93*), in this regard.

**5. "Fraudulent Misrepresentation" and "Fraudulent Concealment/Fraud by Nondisclosure" against all Defendants**

All Defendants assert Ford fails to state claims for fraudulent misrepresentation and "fraudulent concealment/fraud by nondisclosure."[9] *ECF No. 64* at 12–16; *ECF No. 93* at 11–12.

---

[8] *See, e.g., Smith v. MTGLQ Investors, LP*, 2019 WL 13193219, at *3 (S.D. Tex. Aug. 23, 2019) (dismissing claim when *pro se* plaintiff failed to allege loss of specific sale, citing *Van Duzer v. U.S. Bank Nat'l Ass'n*, 582 F. App'x 279, 284 (5th Cir. 2014) (per curiam)); *Balgobin v. JPMorgan Chase Bank, N.A.*, 2019 WL 1046835, at *4 (S.D. Tex. Feb. 15, 2019) (dismissing similar *pro se* claim for failure to include allegation of loss of a specific sale), *R. & R. adopted*, 2019 WL 1045841 (S.D. Tex. Mar. 5, 2019).

[9] No cause of action exists for "fraudulent concealment." Rather, "fraudulent concealment" is a doctrine that "suspends a limitations period when a defendant has concealed the facts underlying a plaintiff's claim." *Abecassis v. Wyatt,* 902 F. Supp. 2d 881, 897 (S.D. Tex. 2012); *See Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983) (fraudulent concealment is used as an equitable estoppel to the affirmative defense of limitations).

In her Response to Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), Ford states that, to the extent any fraud allegations require "additional particularity" under Federal Rule of Civil Procedure 9(b), she should be permitted to amend her Complaint. *ECF No. 65* at 12–13.

"A plaintiff asserting a claim for fraudulent misrepresentation must [allege] the following elements of the tort: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the plaintiff act upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury." *SGK Properties, L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Commercial Mortg. Pass–Through Certificates, Series 2007–3*, 881 F. 3d 933, 943 (5th Cir. 2018) (citations omitted).

In addition, Federal Rule of Civil Procedure Rule 9(b) requires plaintiffs to plead "the 'who, what, when, where, and how'" of an alleged fraud. *Williams v. Bell Helicopter Textron, Inc.,* 417 F. 3d 450, 453 (5th Cir. 2005) (citations omitted). "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp.*, 470 F. 3d 1171, 1174 (5th Cir. 2006) (citations omitted).

The Court agrees with all Defendants that Ford does not adequately state a claim for fraudulent misrepresentation. In Ford's Second Amended Complaint she points to four alleged misrepresentations: (1) Servbank representing Ginnie Mae is the owner of the loan on August 25, 2025; (2) LoanCare representing Fannie Mae is the owner of the loan on February 19, 2026; (3)

---

*Pannell v. Wells Fargo Home Mortg.*, No. 4:18-CV-00141, 2018 WL 3321442, at *3 (S.D. Tex. June 14, 2018).

Lakeview representing it is the current owner of the loan on March 17, 2026; and (4) Servbank and TMS' counsel's "verbal representation of standing" made during the January 7, 2026, Initial Pretrial Conference in this matter. *ECF No. 63* at 29–31. As to the first three alleged misrepresentations, there are no nonconclusory allegations that these representations were false, that Servbank, LoanCare, and Lakeview made the representations with the intent Ford act upon them, or that Ford acted in reliance on the representations. *Id.*; *SGK Properties*, 881 F. 3d at 943. Regarding the fourth alleged misrepresentation, there are no allegations that "raise the right to relief above a speculative level." *Eriakha v. U. of Mississippi*, 190 F.4th 453 (5th Cir. 2026). Ford acknowledges in her Second Amended Complaint that on January 27, 2026, Servbank executed an Assignment of Deed of Trust to Lakeview. *ECF No. 63* at 10. This occurred after the Court's January 7, 2026, Initial Pretrial Conference where Servbank and TMS' counsel allegedly verbally represented the entities' standing. *See* Min. Ent. Jan. 7, 2026.

Accordingly, for these reasons, the Court will grant Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), and Servbank and TMS' Motion to Dismiss, (*ECF No. 93*), in this regard.

A claim for fraud by nondisclosure may arise where (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex. 2001); *JSC Neftegas–Impex v. Citibank, N.A.,* 365 S.W.3d 387, 408 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). A representation is material if "a reasonable person would attach importance to [it] and would be induced to act on

the information in determining his [or her] choice of actions in the transaction in question." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 337 (Tex.2011).

The Court agrees with all Defendants that Ford does not adequately state a claim for fraud by nondisclosure. To distinguish acts particular to each party and particular to each asserted cause of action, "[a]t a minimum, [p]laintiffs should endeavor to explain what role each [d]efendant played . . . rather than grouping them together at all times." *Washington v. Patterson-UTI Energy, Inc.*, No. 5:16-CV-00130, 2016 WL 3081060, at *3 (W.D. Tex. May 31, 2016). In Ford's Second Amended Complaint, regarding this cause of action, Ford presents only conclusory allegations that are lacking in particularity. *ECF No. 63* at 30–31. For example, Ford lumps together LoanCare, Lakeview, Servbank, and TMS, referring to them collectively as "Defendants." *Id.* ("Defendants concealed material facts.") As a result, Ford's collective pleading provides no factual basis to distinguish LoanCare, Lakeview, Servbank, and TMS's conduct.

Accordingly, for these reasons, the Court will grant Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), and Servbank and TMS' Motion to Dismiss, (*ECF No. 93*), in this regard.

**6. "Quiet Title (Declaratory Judgment)" against all Defendants, "Material Alteration and Failure to Produce the Original Note" against all Defendants, and "Declaratory Judgment" against Servbank and TMS**

The Court considers Ford's remaining causes of action, Counts One, Eight, and Nine. Count One, styled "*Quiet Title (Declaratory Judgment)*," seeks a declaratory judgment on the basis "[n]o Defendant has produced evidence sufficient to establish lawful authority to enforce the Note, foreclose on the Property, or otherwise encumber Plaintiff's interests." *ECF No. 63* at 23. Liberally construing Ford's Second Amended Complaint, the Court considers Count Nine,

styled "*Material Alteration and Failure to Produce the Original Note, Defense to Enforcement Under Tex. Bus. & Com. Code § 3.407 and § 3.301*," alongside Count One as it is also based on alleged violations of the Texas Business and Commerce Code. *Id*. at 34–35. Finally, Count Eight seeks an additional declaratory judgment declaring Servbank and TMS have no right to enforce the Note or Deed of Trust. *Id*. at 32–34.

In Count One, styled "*Quiet Title (Declaratory Judgment)*," Ford alleges:

> Servbank, N.A. and The Money Source, Inc. have admitted in writing (Doc 45 ¶ 6 and Doc 58 ¶ 45) that they have no enforceable interest in the Note or Deed of Trust. Lakeview and LoanCare have not produced authenticated chain-of-custody documents, the original wet-ink Note, sworn custodial verification, or competent evidence of person- entitled-to-enforce status under Texas Business and Commerce Code § 3.301.

*ECF No. 63* at 23. In Count Nine, Ford repeats these allegations and also claims the Note has been materially altered, invoking Texas Business and Commerce Code § 3.407. *Id*. at 34–35. The Court notes Ford includes no allegations relating to any fraudulent intent as it relates to the alleged material alteration and that material alteration is an affirmative defense.[10]

"A suit to quiet title is an equitable action." *Hawk v. Deutsche Bank Nat. Tr. Co.*, No. 3:15-CV-01784, 2015 WL 4724797, at *5 (N.D. Tex. Aug. 10, 2015) (quoting *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.)). "To prevail on a claim to quiet title, a plaintiff must show that: (1) they have an interest in the property; (2) title to the property is impaired by the defendant's claim; and (3) the defendant's claim, while facially

---

[10] Under section 3.407, both fraudulent intent and materiality must be established before discharge from the note is permitted. *Lawler v. F.D.I.C.,* 538 S.W.2d 245, 247 (Tex. App.– Beaumont 1976, writ ref'd n.r.e.). Whether an alteration is material is a question of law. *Frost Nat'l Bank v. Burge,* 29 S.W.3d 580, 588 (Tex. App.–Houston [14th Dist.] 2000, no pet.). "An alteration that works no change, but which leaves the terms of the contract the same as before, does not vitiate it." *Id.* at 590 (quoting *Oehler v. Schammel,* 242 S.W.2d 403, 407 (Tex. Civ. App.–Dallas 1951, writ ref'd n.r.e.)). Material alteration is an affirmative defense on which Cunningham had the burden of proof. *See Clark v. Dedina,* 658 S.W.2d 293, 296–297 (Tex. App.–Houston [1st Dist.] 1983, writ dism'd).

*Cunningham v. Anglin*, No. 05-13-01166-CV, 2015 WL 1324631, at *4 (Tex. App.—Dallas Jan. 30, 2015).

valid, is unenforceable." *Gordon v. Bank of New Mellon*, No. 3:25-CV-01489, 2026 WL 844610, at *2 (N.D. Tex. Mar. 11, 2026) (citing *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012)), *R. & R. adopted*, 2026 WL 840883 (Mar. 26, 2026). "[T]he purpose of a traditional suit to quiet title is to remove a cloud from the title created by an invalid claim." *Hawk*, 2015 WL 4724797, at *5 (quoting *Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 726 (Tex. App.—Eastland 2011, pet. denied)).

To succeed on a quiet title claim, a plaintiff generally "must prove, as a matter of law, right, title, or ownership in himself [or herself] with sufficient certainty to enable the court to see that he [or she] has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Hawk*, 2015 WL 4724797, at *6 (quoting *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 59 n.13 (Tex. App.—Fort Worth, pet. denied)). "A plaintiff in a suit to quiet title must prove and recover on the strength of his [or her] own title, not the weakness of his [or her] adversary's title." *Id.* (quoting *Fricks*, 45 S.W.3d at 327).

The Court reproduces a portion of a recent opinion, authored by another district judge in the Western District of Texas' San Antonio Division, describing the "show-me-the-note" theory Ford relies on:

> **A. Violation of the Texas Business & Commerce Code**
>
> Plaintiff alleges that PHH violated the Texas Business & Commerce Code by failing to produce the original note with all allonges, transfers, and assignments. ECF No. 1-3 at 2–3. This legal theory is known as the "show-me-the-note" theory. Its supporters argue that "only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loans Serv., L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at *2 (W.D. Tex. Apr. 26, 2011). The theory relies on th[e] rationale that judicial enforcement of a promissory note requires the enforcing party to prove possession of the original note, and as such a mortgagee in a nonjudicial foreclosure action should be required to do the same.

The "show-me-the-note" theory has been repeatedly rejected by federal courts evaluating Texas law, including this Court. *See, e.g., Martins v. BAC Home Loans Servicing, L.P.*, 722 F. 3d 249, 253–54 (5th Cir. 2013); *Preston*, 931 F. Supp. 2d at 757–58; *Seeberger Bank of Am., N.A. Ventures Tr. 2013 I.H.R. v. Seeberger*, No. EP14-CV-366-KC, 2015 WL 9200878, at *20 (W.D. Tex. Dec. 16, 2015); *Kingman Holdings, L.L.C. v. U.S. Bank Tr.*, No. SA-15-CV-1083-XR, 2016 WL 429804, at *4 (W.D. Tex. Feb. 3, 2016); *Washington v. JP Morgan Chase*, No. SA-11-CV-763-XR, 2013 WL 636054, at *4 (W.D. Tex. Feb. 20, 2013); *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *2–4 (W.D. Tex. Mar. 26, 2012). The Fifth Circuit has likewise held that "[t]he original, signed note need not be produced in order to foreclose," and has reaffirmed this unequivocal rejection of the "show-me-the-note" theory each time it has resurfaced. *See Martins*, 722 F. 3d 249 at 253–54 (5th Cir. 2013); *Shaver v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 593 F. App'x 265, 274 (5th Cir. 2014) ("A party does not need the original note bearing the wet-ink signature to foreclose."); *Casterline v. OneWest Bank, F.S.B.*, 537 F. App'x 314, 316 (5th Cir. 2013) (holding that the "show-me-the-note" theory has no merit under Texas law).

In rejecting the "show-me-the note" theory, courts have reasoned that "Texas law differentiates between enforcement of a promissory note and foreclosure." *Ray v. Citimortgage, Inc.*, No. A-11-CA-441-SS, 2011 WL 3269326, at *3 (W.D. Tex. July 24, 2011). "Foreclosure enforces the deed of trust, not the underlying note . . . [and] is an independent action against the collateral and may be conducted without judicial supervision." *Id.* In contrast, enforcement of the note is a personal action and requires a judicial proceeding. *Id.* "Thus, the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are *severable*." *Claud v. Gray*, 81 S.W.2d 647 (Tex. 1935) (emphasis added); *see also Aguero v. Ramirez*, 70 S.W.3d 372, 375 (Tex. App.—Corpus Christi 2002, pet. denied) ("Where there is a debt secured by a note, which is, in turn, secured by a lien, the note and the lien constitute separate obligations."). Accordingly, a mortgagee may elect its remedy in the event of a borrower's default—it may either seek a personal judgment against the borrower without foreclosing the lien or it may foreclose the lien and subsequently resolve with the borrower any difference in the foreclosure sale amount and the amount due on the note. *Id.*

When a note holder seeks a judgment against the borrower, the holder must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument. Requiring the note holder to prove possession of the original note prevents multiple entities from attempting to collect on it. *See Resol. Tr. Corp. v. Camp*, 965 F. 2d 25, 29–30 (5th Cir. 1992) ("We would not hesitate to reverse summary judgment had Appellants pointed to evidence in the record to the effect that they had a legitimate fear that the RTC was not the owner and holder of the note in question and that some other entity might later approach them demanding payment.").

> In contrast, courts have held that the Texas Property Code does not require a mortgagee in a nonjudicial foreclosure action to produce the original promissory note as a prerequisite to foreclosure. *See Wells*, 2011 WL 2163987, at *3. Section 51.002 of the Code, which lays out the steps that must be taken in order to foreclose on property, does not include a provision requiring a mortgagee to produce the original promissory note. Moreover, the Property Code further provides that a mortgage servicer, such as PHH, may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee. *See id.* § 51.0025. To administer the foreclosure process, the mortgage servicer need only receive written authorization from the mortgagee and disclose that fact to the mortgagors. *See id.* Nothing requires the mortgage servicer to possess the original promissory note. *See Wells*, 2011 WL 2163987, at *3 (collecting cases).
>
> Simply put, there is simply no requirement in Texas that a foreclosing party produce the original, ink-signed note. As such, Plaintiff's claim under the Texas Business and Commerce Code fails insofar as it relies on the "show-me-the-note" theory.

*Clark v. PHH Mortg. Corp.*, No. 5:24-CV-00996-XR, 2024 WL 4849083, at 3–4 (W.D. Tex. Nov. 18, 2024). Thus, like the plaintiff in *Clark*, Ford's claims under the Texas Business and Commerce Code fail insofar as Ford relies on the "show-me-the-note" theory. For additional reasons, however, Ford fails to state a quiet title cause of action.

"Texas Courts have made clear that 'a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note.'" *Marc Loughran v. Shellpoint Mortgage Servicing, et al.*, No. 3:26-CV-02647, 2026 WL 3146627, at *4 (N.D. Tex. Sept. 15, 2026), *R. & R. adopted sub nom. Marc Loughran v. Shellpoint Mortgage Servicing, et al.*, No. 3:26-CV-02647, 2026 WL 3143829 (N.D. Tex. Oct. 19, 2026) (collecting cases). "This requirement has been consistently applied to quiet title claims, meaning a plaintiff must generally allege or tender the amount owed on the note before seeking to recover title." *Id.*

In the present case, Ford does not plausibly allege that she has tendered the amount due on the Note. As other courts have noted, that failure is "fatal" to her claim. *Id.*; *see also Campo v. Bank of Am., N.A.*, 2016 WL 1162199, at *5 (S.D. Tex. Mar. 24, 2016), *aff'd*, 678 F. App'x 227

(5th Cir. 2017) ("Campo is in default and has not alleged that he has tendered the balance of his Loan. His quiet title claim is legally insufficient for this additional reason and is dismissed.").[11]

Ford's challenges regarding the chain of title, assignments, material alteration, and recordation also do not state a viable claim. Specifically, Ford asserts:

> The chain of title to the mortgage obligation is defective. The First Assignment (MERS to Servbank) was not recorded until more than ten years after origination, was executed during active federal litigation, and was prepared by a third-party outsource company. The Second Assignment (Servbank to Lakeview) was executed mid-litigation, without court approval, in the wrong borrower name, and without acknowledging the trust as titleholder of record.

*ECF No. 63* at 23. These are alleged weaknesses on Defendants' title, and these allegations do not state a claim to quiet title. *Marc Loughran v. Shellpoint Mortgage Servicing, et al.*, No. 3:26-CV-02647, 2026 WL 3146627, at *4 (N.D. Tex. Sept. 15, 2026), *R. & R. adopted sub nom. Marc Loughran v. Shellpoint Mortgage Servicing, et al.*, No. 3:26-CV-02647, 2026 WL 3143829 (N.D. Tex. Oct. 19, 2026).[12] Thus, because Ford fails to state an equitable claim to quiet title, her request for declaratory relief based on that claim is also not viable. *Id.* (collecting cases).

Finally, in Count Eight, Ford seeks an additional declaratory judgment declaring Servbank and TMS have no right to enforce the Note or Deed of Trust. *Id.* at 32–34. Because

---

[11] The Court notes Ford includes a citation to "Morlock, L.L.C. v. JPMorgan Chase Bank, N.A., No. 13-20588, 2014 WL 2611280, at *3 (5th Cir. June 12, 2014) (tender not required where plaintiff challenges the validity of the lien itself rather than seeking to avoid payment)." This appears to be a reference to *Morlock, L.L.C. v. JP Morgan Chase Bank, N.A.*, 586 F. App'x. 631 (5th Cir. 2013) (unpublished). Regardless, Ford does not challenge the validity of the lien; instead, Ford challenges who has "lawful authority to enforce the Note, foreclose on the Property, or otherwise encumber Plaintiff's interests." *ECF No. 63* at 23.

[12] *See Daniel v. Ocwen Loan Servicing LLC*, No. 4:18-CV-00844, 2019 WL 2719286, at *7 (N.D. Tex. June 13, 2019) (concluding plaintiff failed to state a quiet title claim based on allegation that assignment of deed of trust was unauthorized), *R. & R. adopted*, 2019 WL 2716521 (N.D. Tex. June 28, 2019); *McGhiey v. Wells Fargo Bank, N.A.*, No. 5:13-CV-00202, 2013 WL 12131236, at *5 (W.D. Tex. May 30, 2013) (rejecting claim where plaintiffs failed to show they were current on mortgage loan payments and their pleadings "instead center on the alleged weakness of defendant's title"); *see also Henry v. Ditech Fin., L.L.C.*, No. 19-20439, 2022 WL 44579, at *1 (5th Cir. Jan. 5, 2022) (unpublished) (affirming grant of judgment on pleadings under Fed. R. Civ. P. 12(c) where plaintiff made "no real argument regarding the strength of his own title [and] instead argu[ed] in conclusory fashion that the deed of trust is invalid because it does not contain his signature"); *Mason v. Fremont Inv. & Loan*, 671 F. App'x 880, 883 (5th Cir. 2016) (concluding amendment to state quiet title claim would have been futile because plaintiff's challenge to validity of assignment of note and deed of trust were not sufficient for a quiet title action).

Ford does not predicate Count Eight upon any cause of action, and the Court finds Ford fails to state any substantive claim for relief, her claim for declaratory relief on this basis likewise fails. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F. 3d 746, 752 n.3 (5th Cir. 1996) (reasoning that declaratory relief is a procedural device and does not establish any substantive rights or causes of action).

Accordingly, for these reasons, the Court will grant Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), and Servbank and TMS' Motion to Dismiss, (*ECF No. 93*), in this regard.

**III. Plaintiff's Motion for Leave to File Third Amended Complaint, (*ECF No. 86*)**

Courts typically grant a *pro se* plaintiff an opportunity to replead his or her claims before dismissal, but leave to amend is not required where amendment would be futile. *See Stripling v. Jordan Prod. Co., LLC*, 234 F. 3d 863, 872–73 (5th Cir. 2000); *see also Brewster v. Dretke*, 587 F. 3d 764, 767–68 (5th Cir. 2009).

In the present case, leave to amend is not required for at least two reasons. First, Ford has twice been permitted to amend her Original Complaint. *See ECF Nos. 50, 53, 55, 56, 59, 62, 63*. Second, Ford abandons all but three causes of action in her proposed Third Amended Complaint and these causes of action cannot be remedied by amendment.

In her proposed Third Amended Complaint, Ford retains her quiet title, FDCPA, and RESPA causes of action. *ECF No. 86-1*. Based on the Court's review of the Second Amended Complaint, Ford's Response to Lakeview and LoanCare's Motion to Dismiss, (*ECF No. 64*), Ford's lack of Response to Servbank and TMS' Motion to Dismiss, (*ECF No. 93*), and Ford's proposed Third Amended Complaint, (*ECF No. 86-1*), it does not appear Ford can state a tenable

quiet title cause of action, the crux of her claims, based on the available facts.[13] This is particularly true if, as is implied from the briefing, Ford has not tendered payment of the amount due on the Note. *ECF No. 86-1*. As to Ford's FDCPA cause of action, by Ford's own pleadings, Servbank and LoanCare are not debt collectors, but mortgage servicing companies. *Id*. Regarding Ford's RESPA cause of action, she again fails to allege any nonconclusory facts giving rise to a reasonable inference that she suffered actual damages from Servbank's alleged failure to respond to her QWR. *Id*. The Court therefore finds amendment would be futile.

For this reason, Plaintiff's Motion for Leave to File Third Amended Complaint, (*ECF No. 86*), will be denied.

**CONCLUSION**

Accordingly, Plaintiffs' Motions, (*ECF Nos. 85, 86*), are **DENIED** and Defendants' Motions, (*ECF Nos. 64, 93*), are **GRANTED**. Because all causes of action in this matter have been dismissed, the Clerk of Court is **ORDERED** to close this case upon entry of the simultaneously-issued Final Judgment.

IT IS SO ORDERED.
SIGNED this 3rd day of November, 2026.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE

[13] *See Cisneros v. U.S. Bank, N.A.*, No. 3:14-CV-04140, 2015 WL 685990, at *3 (N.D. Tex. Feb. 18, 2015) (dismissing quiet title claim with prejudice without repleading where plaintiff "relie[d] on discredited theories to avoid the inevitable consequences of his failure to pay his Note").